# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ST ENGINEERING MARINE, LTD )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>THOMPSON, MacCOLL & BASS, LLC, )<br>)<br>Defendant. ) | Civil Action No. _____ |

## COMPLAINT

Plaintiff ST Engineering Marine, Ltd, through its undersigned counsel, complains against Defendant Thompson, MacColl & Bass, LLC as follows:

1. Plaintiff, ST Engineering Marine Ltd ("STEM") formerly known as Singapore Technologies Maritime Ltd., is a business entity organized and existing under the laws of Singapore. At all relevant times to the allegations of this Complaint, STEM's principal place of business has been located at 16 Benoi Road, Singapore 629889.

2. Defendant, Thompson, MacColl & Bass, LLC ("Thompson MacColl") is a Maine limited liability company engaged in the practice of law in the State of Maine, and with the principal place of business in the City of Portland, Maine.

## JURISDICTION

3. This Court has jurisdiction of this matter pursuant to Title 28 § 1332(a)(2), as the matter in controversy exceeds the sum of $75,000 and the controversy is between a citizen of a State and a citizen of a foreign state.

4. At all times pertinent to the allegations of this Complaint, attorneys John Bass and Edward MacColl were members and employees of Thompson MacColl, and, acting in the course and scope of their employment with the firm.

5. At all times pertinent to the allegations of this Complaint, STEM was the registered owner of an ocean-going vessel known as "M/V Nova Star" and had bareboat chartered the M/V Nova Star to a company named Nova Star Cruises Ltd ("NSCL") to provide ferry service between Yarmouth, Nova Scotia and Portland, Maine.

6. At all times pertinent to the allegations of this Complaint, a company known as Fleet Pro was acting as NSCL's agent with respect to certain aspects of the M/V Nova Star, including, but not limited to, the procurement of fuel for the M/V Nova Star.

7. On or about June 2015, Fleet Pro contracted with Bunkers International Corporation to provide fuel to the M/V Nova Star.

8. Bunker International Corporation in turn subcontracted with Sprague Operating Resources LLC ("Sprague") to provide fuel to the M/V Nova Star. It was Sprague that physically supplied the fuel ("Fuel") to the M/V Nova Star.

9. NSCL paid Fleet Pro in full for the Fuel and Fleet Pro paid Bunkers International Corporation for the Fuel.

10. However, Bunkers International Corporation did not pay Sprague for the Fuel and subsequently commenced a Chapter 11 proceeding in the United States Bankruptcy Court.

11. Sprague commenced maritime *in rem* proceedings to recover the amounts owed to it for the Fuel and in November 2015 arrested the M/V Nova Star in Portland, Maine (the "Sprague Arrest"), alleging that it had a maritime lien on the vessel pursuant to the Federal

Maritime Lien and Commercial Instruments Act. Following the arrest, STEM terminated the BIMCO Bareboat Charter Agreement.

12. A maritime lien is necessary pursuant to the maritime law of the United States to effectuate the *in rem* arrest of a ship.

13. Other suppliers of goods and services to the vessel also arrested the M/V Nova Star, alleging that they had maritime liens for the goods and services they had provided.

14. Thompson MacColl was retained to represent STEM and the M/V Nova Star in connection with all claims and arrests, including the Sprague Arrest.

15. On or about November 2015, Thompson MacColl advised STEM that Sprague had a maritime lien on the M/V Nova Star and that the only way to extinguish the maritime lien was for STEM to pay Sprague for the Fuel.

16. In reliance on Thompson MacColl's advice, STEM remitted payment to Sprague and the M/V Nova Star was released from arrest.

17. At the time Thompson MacColl gave their advice, the law in the United States regarding maritime liens by suppliers of maritime law was unsettled, and it was unclear whether the physical supplier of the Fuel or the contracting supplier of the Fuel was entitled to a maritime lien against the M/V Nova Star.

18. Approximately one year before Thompson MacColl gave their advice, questions began to arise as to whether the physical supplier or the contract supplier were entitled to assert a maritime lien and this question was the subject of numerous articles in the maritime press and on the Internet.

19. During the year prior to Thompson MacColl providing advice to STEM, numerous court cases were filed in various federal district courts, including over 20 cases in the

Southern District of New York alone. These cases involved the question of whether the physical supplier or the contract supplier of fuel had a maritime lien and whether an interpleader action was the proper procedural action to resolve such disputes.

20. During the one-year prior to Thompson MacColl providing its advice to STEM, maritime lawyers faced with arrests by fuel supplier routinely advised their clients to avoid paying either the physical supplier or the contract supplier until the question of who held the maritime lien for the fuel supply was resolved, either by providing security for the claim to obtain a release of the vessel from arrest and contesting the lien or by commencing an interpleader action.

## COUNT I
## NEGLIGENCE

21. Plaintiff repeats and realleges the allegations of paragraphs 1 - 20 of the Complaint as if fully set forth herein.

22. An attorney-client relationship existed between STEM and Thompson MacColl.

23. Thompson MacColl owed a duty of care to appropriately advise STEM as to the then-current state of the law with respect to maritime fuel liens.

24. At the time Thompson MacColl gave its advice to STEM, it failed to advise STEM that the law relating to maritime fuel liens was unsettled or that Sprague may not have a lien, nor did they recommend that this question be investigated further.

25. The applicable standard of care for a maritime practitioner advising a shipowner whose vessel had been arrested by a physical fuel supplier required that the shipowner be advised the law was unsettled as to whether the physical supplier or the contract supplier had a maritime lien and to advise the client that rather than pay either the physical supplier or the contract supplier, the client had other options such as posting security and contesting the lien.

26.    Thompson MacColl breached the applicable standard of care and was negligent, which negligence included:

(a)    failing to advise STEM that the law relating to maritime liens by fuel suppliers was unsettled generally and in a state of transition;

(b)    failing to advise STEM that there was no controlling decision in the District of Maine on the issue;

(c)    failing to advise STEM of the possibility of providing security to obtain release of the M/V Nova Star while contesting whether Sprague had a maritime lien;

(d)    failing to advise STEM or recommend to STEM, that further investigation should be undertaken to determine whether Sprague had a maritime lien; and

(e)    failing to advise STEM that based on developments in the law there were arguments that could be made that if successful would defeat the maritime lien.

27.    As a direct and proximate result of Thompson MacColl's negligence, STEM has been damaged.

WHEREFORE, Plaintiff prays for damages according to proof, for its costs of suit incurred herein and for such other and further relief as is appropriate in the circumstances.

Dated:  September 15, 2020

/s/ Lee H. Bals
Lee H. Bals, Bar No. 3412

Attorney for Plaintiff STEM

MARCUS|CLEGG
16 Middle Street, Unit 501
Portland, ME  04101-5166
(207) 828-8000
lbals@marcusclegg.com